IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | |
| v. | : | Criminal Action |
| | : | |
| | : | No. 22-cr-332 |
| **ANTONY GUTIERREZ DURAN**, | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM**

**Younge, J.**                                                                                              **July 3, 2025**

## I.    INTRODUCTION

Before this court is Antony Gutierrez Duran's Motion for Early Termination of Supervised Release pursuant to 18 U.S.C. § 3583(e)(1). (Motion for Early Termination of Probation, ECF No. 47 ("Early Termination") at 2-3). For the reasons set forth in this Memorandum, said Motion is Denied.

## II.    FACTUAL BACKGROUND

On October 27, 2022, Mr. Duran appeared before this Court and entered a plea of guilty, pursuant to a written plea agreement, to an information charging him with one count of Unlawful Use, Transfer, Acquisition, and Possession of Supplemental Nutrition Assistance Program (SNAP) benefits in violation of 7 U.S.C. § 2024(b). (ECF No. 3). The plea agreement, signed by Mr. Duran and dated September 22, 2023, includes the following waiver:

> In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to file any appeal, any collateral attack, or any other writ or motion that challenges the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such an appeal, collateral attack, or other writ or motion arises under 18

U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. As part of this knowing and voluntary waiver of the right to challenge the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that (1) the statute to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute.

(Plea Document, ECF No. 6 ("Plea") ¶ 13). The Court found that Mr. Duran was capable of entering an informed plea, and thus accepted his plea of guilty.

On August 15, 2023, this Court sentenced Mr. Duran to one day in custody, three years of Supervised Release, and a $70,000.00 fine (Early Termination at 1). Beginning in August of 2023, Mr. Duran began serving his sentence. (Response in Opposition, ECF No. 49 ("Response") at 3). The supervised release period is scheduled to conclude in August of 2026. (*Id*. at 3; Early Termination at 1).

On May 30, 2025, Mr. Duran filed the present motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). (Early Termination at 2). In support of his motion, Mr. Duran explained that he tried to refinance his home to obtain a bank loan and pay the outstanding balance of his $70,000 fine, but the bank denied the loan request because he was on supervised release. (Early Termination at 2). If the Court grants this motion, Mr. Duran claims that he will use his house as collateral to obtain the bank loan to pay the remainder of his balance. (Early Termination at 2). However, without the loan, Mr. Duran avers that he would be unable to pay the fine within the 36 months of supervised release. (Early Termination at 2).

After receiving Mr. Duran's motion, this Court ordered the Government and the U.S. Probation Office to file a Response. On June 17, 2025, the Government filed its Response in opposition to Mr. Duran's motion for early termination of supervised release. (Response, ECF No. 49). Thereafter, on June 20, 2025, the U.S. Probation Officer provided the Court their response.

Finally, on July 2, 2025, Mr. Duran filed his Reply to the Government's Response. (Reply, ECF No. 55).

### III. DISCUSSION

Prior to reviewing the merits of Mr. Duran's motion for early termination of supervised release, the Court must determine his ability to bring such a motion. The Government argues that Mr. Duran waived his right to motion for early termination of supervised release in his plea agreement, which barred him from seeking such relief. Because of the language in Mr. Duran's plea agreement, as analyzed below, this Court agrees that plea agreement prevents Mr. Duran from pursuing this motion.

A court will enforce a waiver of appellate rights if it determines, "(1) that the issues he pursues on appeal fall within the scope of [the defendant's] appellate waiver and (2) that [the defendant] knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008). In application of this test in *United States v. Damon*, the Third Circuit held that the defendant waived their right to file any motions for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1) because the language in their plea agreement precluded the defendant from seeking such relief. *See* 933 F.3d 269, 275 (3d Cir. 2019). As Mr. Duran presents the same motion here, the Circuit's analysis in *Damon* is instructive.

The Circuit highlighted the following section of the plea agreement that the *Damon* defendant and the Government executed:

> Ronald Damon knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, **or any other writ or motion**, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which **challenges the sentence imposed** by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 33.

933 F.3d at 271 (emphasis added). After determining that this language was unambiguous, the Circuit explained that "the waiver govern[ed] if the 'sentence imposed' on Damon include[d] the term of his supervised release and if this appeal 'challenge[d]' that sentence." *Id.* at 273. The Circuit determined that "the word 'sentence' is commonly understood to encompasses all penalties imposed on a defendant, which can include penalties beyond imprisonment." *Id.* Thus, the "'sentence' must be read to include the term of his supervised release." *Id.* Accordingly, a motion for early termination of supervised release is a motion to impact the sentence. *Id.* As for the verb "challenges," the Circuit explained that "in the legal context [it] is generally understood to mean 'to dispute or call into question.'" *Id.* at 274. The Circuit understood Damon's motion for early termination of supervise release to fit this definition because it "question[ed] his original sentence by seeking to shorten the term of his supervised release." *Id.* With this interpretation of the language, the Circuit ultimately held that the defendant's "challenge to the duration of his supervised release falls within the scope of his appellate waiver," and thus could not be granted. *Id*.

In this Circuit, courts have applied *Damon* to deny motions for early termination of supervised release where the defendant signed a plea agreement waiving their right to bring such motions. *See e.g.*, *Jensen, infra.* However, courts have departed from *Damon* when either (1) a probation officer rather than the defendant moves for early termination for supervised release, *see e.g.*, *United States v. Harris*, No. 14-434, 2021 WL 4342091, at *3 (D.N.J. Sept. 23, 2021), or (2) the waiver contains much narrower language than the waiver in *Damon*. *see, e.g., United States v. Fluellen,* No. 09-497-1, 2022 WL 309159, at *6 (E.D. Pa. Feb. 2, 2022). In the second set of cases, of which Mr. Duran attempts to compare to this case in his Reply brief, these courts determined that a waiver only barring "appeals and collateral attacks" is narrower than the language in *Damon*

barring "any other writ or motion" that "challenges," thus leaving out motions for early termination of supervised release in their scope. *See id.*; *United States v. Pearson,* No. 04-433, 2024 WL 1936226, at *1 (E.D. Pa. May 1, 2024) ("Here, Pearson's plea agreement bars only appeals and collateral attacks."); *United States v. Tarboro*, No. 08-323-01, 2023 WL 3821812, at *2 (E.D. Pa. June 5, 2023) (E.D. Pa. 2023) ("Defendant's appellate waiver provision is much narrower than the one present in *Damon* because it does not contain the same broad waiver of *any motion* that challenges the underlying sentence. Rather, it only references an appeal or collateral attack on his sentence."); *United States v. Gonzalez*, 2024 WL 1743754, at *2 (E.D.Pa., 2024) ("This case is distinguishable… Here, Gonzalez's plea agreement bars only appeals and collateral attacks."); *United States v. Mabry*, 528 F.Supp.3d 349, 354 (E.D.Pa., 2021) ("Mabry's plea agreement is narrower and only bars appeals and collateral attacks."); *United States v. Crews*, 2020 WL 6581430, at *2 (E.D.Pa., 2020) (finding that the language in the plea agreement, which only mentions waiving "all rights to appeal or collaterally attack," did not apply to a motion pursuant to 18 U.S.C. 3583(e).); *United States v. Weems*, No. CR 09-708-1, ECF 143, at *2 (E.D. Pa. January 6, 2023) ("Defendant's appellate waiver provision is much narrower than the one present in Damon because it does not contain the same broad waiver of any motion that challenges the underlying sentence."). Unlike *Damon*, the waivers in these cases did not contain language barring "any motion" that would "challenge" the sentence; instead, the waivers narrowly dealt with appeals and collateral attacks.

Contrary to Mr. Duran's suggestion, this departure is of no issue here, as the language that triggered waiver in *Damon* is present in Mr. Duran's plea agreement. In fact, when the language in a waiver is substantially similar to the language in the *Damon* waiver, courts have held that the waiver applies to motions for early termination of supervised release. *United States v. Jensen,* No.

19-619, 2025 WL 885625, at *2 (D.N.J. Mar. 21, 2025). For example, in *Jensen*, the defendant's waiver included the following provision:

> waive[d], the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the [applicable Sentencing Guidelines range].

*Id.* The court determined that "Defendant's 'challenge to the duration of his supervised release falls within the scope of his appellate waiver.'" *Id*. (quoting *Damon*, 933 F.3d at 275). Accordingly, the *Jensen* court applied *Damon* and denied the defendant's Motion for Early Termination of Supervised Release. 2025 WL 885625, at *3; *see also United States v. Haring,* No. 16-301, 2023 WL 7489993, at *2 (D.N.J. Nov. 13, 2023) (holding the motion is precluded due because the plea agreements reads that the "[defendant] voluntarily waives, the right to file any appeal, any collateral attack, *or any other writ or motion* ... which challenges the sentence imposed."). Just as the language in *Jensen* is substantially similar to the language in *Damon*, specifying not only that the defendant cannot file an appeal or collateral attack to the sentence, but also waives "any other writ or motion" that "challenges the sentence," Mr. Duran's waiver here specifies that he cannot file an appeal, collateral attack, or "any other writ or motion that challenges the defendant's . . . sentence." (Plea ¶ 13). Accordingly, Mr. Duran's motion for early termination of supervised release falls into the scope of the waiver in his plea agreement.

Turning to the remainder of the *Corso* test, Mr. Duran's plea agreement also satisfies the other two elements, indicating that the appellate waiver must be enforced. On the second factor, Mr. Duran knowingly and voluntarily agreed to the waiver. This prong is satisfied when the Court ensures that the defendant understands the waiver during a proceeding. *See United States v. Clark*, No. 06-205-7, 2021 WL 3737195, at *4 (E.D. Pa. Aug. 24, 2021) (explaining that the defendant

knowingly and voluntarily consented to the waiver because the judge reviewed the waiver and ensured the defendant understood the terms). Here, at the plea hearing, this Court conducted a colloquy to ensure that Mr. Duran's agreement to the plea was indeed knowing and voluntary, such that Mr. Duran understood the rights he waived. (ECF No. 3; Response at 3). During the colloquy, Mr. Duran acknowledged the waiver itself, indicating that he understood he was knowingly and voluntarily waiving the rights. (Response at 6). Mr. Duran does not point to a moment in the colloquy that puts into question whether he knew he was agreeing to the waiver. (Reply). On the third factor, there "may be an unusual circumstance where an error amounting to a miscarriage of justice." *United States v. Khattak*, 273, F.3d 557, 562 (3d Cir. 2001). Here, no such unusual circumstance exists. The failure to obtain a bank loan does not rise to the standard of an unusual circumstance. Banks deny loan requests for a variety of reasons, so such a denial does not amount to a miscarriage of justice. Satisfying all three factors of the *Corso* test, the Court must enforce Mr. Duran's plea agreement that bars motions for early termination for supervised release, so the Motion is denied.[1]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Early Termination of Supervised Release is Denied.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**

---

[1] Even if this Court were to review the merits of Mr. Duran's Motion, the Motion would be denied. Under 18 U.S.C. § 3583(e)(1), sentencing courts "may… terminate a term of supervised release, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *Id.* The provision requires courts to evaluate the following factors in its determination:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Davies*, 746 Fed. Appx. 86, 88-89 (3d Cir. 2018) (citing 18 U.S.C. § 3553(a)(1), (2)(B)-(D) & (4)-(7)). Even though "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)," the Circuit explained that "'[g]*enerally*, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020). While the Court applauds Mr. Duran for remaining arrest free, neither his conduct nor the interest of justice warrant his early release from his sentence. Considering the above factors, Mr. Duran's alleged inability to obtain a loan is not sufficient to disrupt the sentence issued by the Court.